Ari Marcus, Esq.
Marcus & Zelman, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Tel: 732-695-3282
Fax: 732-298-6256
ari@marcuszelman.com
[Additional counsel appearing on signature page]

*Counsel for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEWART SMITH and BRENNAN LANDY, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> PRO CUSTOM SOLAR LLC d/b/a MOMENTUM SOLAR, a New Jersey limited liability company, <br><br> *Defendant.* | CIVIL ACTION <br><br> Case No. 2:19-cv-20673 <br><br> **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY** <br><br> Motion Date: March 16, 2020 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.   INTRODUCTION ......................................................................................1

II.  SUMMARY OF THE CLAIMS ...............................................................3

III. ARGUMENT ............................................................................................4

    A.   The Supreme Court's *AAPC* Ruling Will Not Likely Have Any
        Bearing On Plaintiffs' Claims, And A Stay Is Inappropriate ........6

    B.   Plaintiffs Have Sufficiently Alleged TCPA Violations, Including
        The Use Of An Autodialer And The Lack Of Consent .................11

    C.   Defendant's Constitutional Arguments Should Be Rejected
        Because They Have Not Been Properly Noticed And They Do Not
        Affect Plaintiffs' Claims ..............................................................15

    D.   The Facts Of This Case Remain Disputed, And Summary
        Judgment Before Any Discovery Would Be Inappropriate ..........19

IV.  CONCLUSION ........................................................................................21

i

# TABLE OF AUTHORITIES

## CASES

*Am. Ass'n of Political Consultants, Inc. v. FCC*,

> 923 F.3d 159 (4th Cir. 2019) ...................................................................*passim*

*Am. Ass'n of Political Consultants, Inc. v. Sessions*,

> 323 F. Supp. 3d 737, (E.D. N.C. 2018) ...............................................7, 17, 18

*Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320 (2006)......................8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................12

*Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017) .............17, 18

*Caleb v. CRST, Inc.*, 43 Fed. Appx. 513 (3d Cir. 2002).........................................12

*Ciolli v. Iravani*, No. 2:08-cv-02601,

> 2008 WL 4412053 (E.D. Pa. Sept. 23, 2008)................................................11

*Conley v. Gibson*, 355 U.S. 41 (1957)....................................................................12

*Doe v. Abington Friends Sch.*, 480 F.3d 252 (3d Cir. 2007)...................................19

*Douek v. Bank of Am. Corp.*, Civ. No. 17-2313,

> 2017 WL 3835700 (D. N.J. Sept. 1, 2017)....................................................13

*Dowling v. City of Philadelphia*, 855 F.2d 136 (3d Cir. 1988) ..............................19

*Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) .............................8, 9, 18

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010).......8

*Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920 (C.D. Cal. 2018)......17, 18

*Greenley v. Laborers' Int'l Union of N. Am.*,

    271 F. Supp. 3d 1128 (D. Minn. 2017) .................................................... 17, 18

*Holt v. Facebook Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017) ........................ 17, 18

*Hubicki v. ACF Indus., Inc.*, 484 F.2d 519 (3d Cir. 1973) ...................................... 19

*Iowa Network Services, Inc. v. AT&T Corp.*, No. 3:14-cv-3439 (PGS) (LHG),

    2019 WL 4861438 (D. N.J. Oct. 2, 2019) ........................................................ 9

*Johnson v. Comodo Group, Inc.*, Civil Action No. 16-4469 (SDW)(LDW),

    2020 WL 525898 (D. N.J. Jan. 31, 2020) ............................................ 18, 19

*Jones v. U-Haul Co.*, 16 F. Supp. 3d 922 (S.D. Ohio 2014) .................................. 16

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) .................................................. 9, 10

*Marshall-Silver Construction Co. v. Mendel*, 894 F.2d 593 (3d Cir.1990) ............ 12

*Mejia v. Time Warner Cable Inc.*,

    2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) ........................................... 17, 18

*Mincey v. Jefferson Capital Sys., LLC*, Civil No. 19-285 (NLH/JS),

    2019 WL 4686766 (D. N.J. Sept. 26, 2019) ................................................... 16

*Radich v. Goode*, 886 F.2d 1391 (3d Cir. 1989) ..................................................... 20

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015) ........................................... 7

*Rupert v. PPG Industries, Inc.*, No. 07cv0705,

    2007 WL 3125092 (W.D. Pa. Oct. 24, 2007) ................................................. 12

*Shelton v. Nat'l Gas & Elec., LLC*, Civ. No. 17-4063,

    2019 WL 1506378 (E.D. Pa. Apr. 5, 2019) ...................................................13

*Vazquez v. Triad Media Solutions, Inc.*, Civ. No. 15-CV-07220 (WHW)(CLW),

    2016 WL 155044 (D. N.J. Jan. 13, 2016) ...................................................16

*Whitehead v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-470-FtM-99MRM,

    2018 WL 5279155 (M.D. Fla. Oct. 24, 2018)..............................................13

## STATUTES, RULES, AND OTHER SOURCES

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a),

    129 Stat. 584 (2015) .........................................................................6

D. N.J. Local Civ. R. 24.1 ....................................................................16

Fed. R. Civ. P. 5.1 ..............................................................................16

Fed. R. Civ. P. 56................................................................................19, 20

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* .......*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs Stewart Smith ("Smith") and Brennan Landy ("Landy") (collectively "Plaintiffs") allege in their complaint, filed on behalf of themselves and a class of similarly situated individuals, that Defendant Pro Custom Solar LLC d/b/a Momentum Solar ("Defendant" or "Pro Custom") violated the Telephone Consumer Protection Act ("TCPA") by making unsolicited, autodialed and prerecorded phone calls to consumer cell phones without prior express written consent. In response, Defendant's scattershot motion asks the Court for relief in a variety of forms, including a stay, dismissal, judgment on the pleadings, and permission to file a motion for summary judgment. Fortunately for Plaintiffs and the Class, the arguments put forth by Defendant in favor of each avenue of reprieve lack merit, and the case should instead proceed to discovery.

First, Defendant's argument to stay the case does not hold up. Pro Custom misleadingly frames an upcoming Supreme Court case as bearing on the constitutionality of the entire TCPA, when in fact that case relates to a content-based exemption for certain debt collection calls, which is readily severable from the TCPA and not at issue in this case. Though Defendant may be eager to do away with the TCPA, it cannot credibly assert that the Supreme Court is likely to do

1

so—its speculation on what the Supreme Court may do is not grounds for a stay. Put simply, Pro Custom's request for a stay is meritless.

Second, Plaintiffs have sufficiently pleaded TCPA violations by Defendant to survive a motion to dismiss. Despite Pro Custom's reliance on incomplete citations, the Complaint contains sufficient allegations that the calls received were placed using an automated telephone dialing system ("ATDS"), not just a "predictive dialer." Likewise, Plaintiffs have alleged that they did not consent to the calls, and Defendant's assertions to the contrary are patently false.

Defendant's third and fourth requests are improper. Pro Custom asks for judgment on the pleadings based on its claim that the entire TCPA is unconstitutional. However, Defendant has not properly noticed a constitutional challenge to the statute, and its arguments should be ignored. Further, its arguments make clear that Defendant is simply trying to liken this case to *AAPC* by challenging the same exemption that was at issue in *AAPC*—an exemption that is already set to be reviewed by the Supreme Court and has never been found to invalidate the TCPA as a whole.

Similarly, Pro Custom's request for permission to file a motion for summary judgment is inappropriate considering that the facts remain disputed and no discovery has occurred. Defendant's mere representation to the Court that its dialer is not an ATDS, which has not been substantiated by any evidence, does not

2

support summary judgment and does not resolve the Parties' dispute. A motion for summary judgment is premature and unsuitable at this time.

Accordingly, and as explained below, the Court should deny Defendant's Motion in its entirety.

## II.    SUMMARY OF THE CLAIMS

In the Complaint, Plaintiffs claim that Pro Custom violated the TCPA by making unsolicited, autodialed and prerecorded calls to their cellphones and to the cellphones of a class of consumers, all of whom did not provide prior express written consent to receive such calls. (*See* Compl., dkt. 1 at ¶ 42.) One of the components of the autodialed claim is that the technology used by Pro Custom to make the calls qualifies as an ATDS under the TCPA—equipment with the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to thereafter dial such numbers. (*See id.* ¶¶ 10, 44–45.)

Smith alleged four different calls from Defendant that were made with an ATDS or prerecorded voice, and he "never provided any oral consent or written consent" to receive such calls. (*Id.* ¶¶ 20–22.) Similarly, Landy alleged two calls received from Defendant that featured a pre-recorded voice—Landy also alleged that he "never provided any oral consent or written consent" to receive the calls. (*Id.* ¶¶ 25–28.) By making the calls alleged in the Complaint, Defendant caused

harm to Plaintiffs and to a class of individuals who experienced the same calls without providing any consent. (*See id.* ¶¶ 31–32.)

In order to redress these harms on behalf of themselves and the other Class members, Plaintiffs alleged and will seek to certify the following class:

> **No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's solar products and services; (5) using the same equipment that was used to call the Plaintiffs; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiffs.

(*Id.* ¶ 33.) As the term "No Consent Class" suggests, this proposed class is limited to consumers for whom Pro Custom "*claims* it obtained prior express written consent" to call in the same manner as it may claim it did to call Plaintiffs—as alleged by Plaintiffs, no consent was given, and the same would be true for consumers who fit the class definition. (*Id.*) (emphasis added).

## III.   ARGUMENT

Each of Pro Custom's requests for relief fails in turn. Defendant's request for a stay, premised on an apparent confidence that the TCPA's restrictions on autodialers will be declared unconstitutional, mischaracterizes the issue before the Supreme Court. The *AAPC* case concerns an exemption to the TCPA for certain debt collection calls which are not at issue here, and only a (unlikely) decision to

4

invalidate the entire statute as unconstitutional would have any bearing here. A stay pending Pro Custom's pie-in-the-sky expectation is not appropriate.

Defendant's request for dismissal also fails, as Pro Custom can only argue insufficient pleadings by omitting or ignoring a significant portion of Plaintiffs' allegations. Plaintiffs have adequately alleged violation of the TCPA, including the use of an autodialer and the lack of consent for the calls.

Further, though it makes up the largest portion of Defendant's scattershot motion, the Court should not consider Pro Custom's request for judgment on the pleadings—this request is based on a constitutional challenge to the TCPA that has not been properly raised or noticed. By contesting the government-debt exemption to the TCPA, which is unlikely to bear on this matter, Defendant is merely parroting the challenge at play in *AAPC* and attempting to delay relief to Plaintiffs and the Class.

Finally, Pro Custom's request for permission to file a motion for summary judgment is similarly inappropriate. Though permission is not needed under the Federal Rules, Defendant's request is based on its belief the dialer at issue is "undisputed[ly]" not a qualifying autodialer, which is untrue. (Def. Mot., dkt. 9-1, at 15.) Plaintiffs allege that an ATDS was used, and Pro Custom asks the Court to believe its bare assertions that the dialer used is not an ATDS. This is a factual dispute that cannot be resolved without discovery.

In short, Defendant's requests for relief are without merit, and the Court should therefore deny Pro Custom's motion and each request therein.

### A.   The Supreme Court's *AAPC* Ruling Will Not Likely Have Any Bearing On Plaintiffs' Claims, And A Stay Is Inappropriate.

At the outset of its motion, Pro Custom asks the Court to stay the case pending the Supreme Court's ruling in the *AAPC* matter. However, Defendant's motion overstates the scope of the Supreme Court's review, which is considerably less likely to impact this litigation than Pro Custom posits. Accordingly, a stay pending resolution of an issue that bears no relation to Plaintiffs' complaint would be inappropriate.

Defendant's motion to stay is premised on the Supreme Court's decision to grant *certiorari* and review the Fourth Circuit's recent ruling in *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019). The *AAPC* case concerns a challenge to the constitutionality of a TCPA exemption for debt collection calls. In 2015, Congress enacted a third exemption[1] to the TCPA's ban on automated calls to permit calls "made solely to collect a debt owed to or guaranteed by the United States." *AAPC*, 923 F.3d at 162 (citing Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a), 129 Stat. 584, 588 (2015)).

---

[1] The first two exemptions, included in the TCPA when it was originally enacted in 1991, are for calls made for emergency purposes and calls made with the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A).

In 2016, AAPC and several other plaintiffs challenged the debt collection exemption to the TCPA as unconstitutional in the Eastern District of North Carolina. *See Am. Ass'n of Political Consultants, Inc. v. Sessions*, 323 F. Supp. 3d 737, 739 (E.D. N.C. 2018). The court ultimately granted summary judgment in favor of the defendant, finding that: (1) the TCPA's government-debt exemption was a content-based restriction of speech; but (2) the exemption withstood strict scrutiny and therefore was not unconstitutional. *Id.* at 743–44. On appeal, the Fourth Circuit vacated and remanded the district court's findings. The Court in *AAPC* agreed that the government-debt exemption was a content-based restriction on speech, but held that it could not withstand strict scrutiny because it is "woefully underinclusive" and impedes the compelling privacy interest that the TCPA was enacted to protect. *AAPC*, 923 F.3d at 168–170. In other words, the exemption cannot be said to further a compelling interest "when it leaves appreciable damage to that supposedly vital interest unprohibited." *Id.* at 170 (quoting *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2232 (2015)).

Rather than striking the automated call ban or the TCPA itself as unconstitutional, the Fourth Circuit ordered the Supreme Court's "preferred remedy": severance of the government-debt exemption from the TCPA. *Id.* at 171–72. The Court explained that severance was appropriate for a number of reasons. First, severance of a flawed portion of a statute is often the Supreme Court's

"required course" to "limit the impact of its ruling of constitutional infirmity" and leave the valid remainder of a statute intact. *Id.* at 171 (citing *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010); *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328 (2006)). Second, the preference for severance is bolstered by the TCPA's explicit mandate that if any part "is held invalid, the remainder . . . shall not be affected." *Id.*; 47 U.S.C. § 608. Finally, the Court noted that the automated call ban would not be undermined by severance because "[f]or twenty-four years, from 1991 until 2015, the automated call ban was 'fully operative'" without the government-debt exemption. *AAPC*, 923 F.3d at 171 (citing *Free Enter. Fund*, 561 U.S. at 509).

The Ninth Circuit reached the same conclusions in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). "The newly enacted exception [for government-debt calls] did not suddenly and silently become so integral to the TCPA that the statute could not function without it." *Id.* at 1157. Thus, the Court similarly concluded that severing the violative exemption "preserves the fundamental purpose of the TCPA" and restores the Act to a content-neutral state. *Id.*

Here, Plaintiffs' claims do not relate to the government-debt collection exemption in any way. Nevertheless, Defendant claims that there are "multiple outcomes" in the Supreme Court's review that could impact this case, thereafter

8

detailing only one such outcome—a determination that the TCPA and its restrictions on autodialed calls are rendered unconstitutional *in their entirety* by the government-debt exemption. (Dkt. 9-1, at 2.) This is the only outcome described by Pro Custom because it is the *only* scenario in which the *AAPC* decision could impact this case in any way. Plaintiffs wouldn't presume to divine with any certainty how the Supreme Court will rule, but Pro Custom's prediction that a nearly thirty-year-old statute will be thrown out due to the unconstitutionality of a five-year-old exemption is farfetched at best, especially given that severance is not only preferred by the Supreme Court but required by the TCPA itself. *AAPC*, 923 F.3d at 171–72; *Duguid*, 926 F.3d at 1156–57.

Defendant's subsequent analysis of the factors supporting a stay is likewise flawed. Though courts have inherent power to control their own dockets, which includes the power to stay, any party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Iowa Network Services, Inc. v. AT&T Corp.*, No. 3:14-cv-3439 (PGS) (LHG), 2019 WL 4861438, at *6 (D. N.J. Oct. 2, 2019) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)).

Here, the relevant factors do not support granting a stay. Delaying this matter while the Supreme Court considers the constitutionality of the government-

debt exception to the TCPA—one that is not at issue in this case—does not promote judicial economy or simplify any issues. Rather, it is a request to postpone the case so that Defendant can wait and hope that review of a discrete (and here, immaterial) exemption to the TCPA's automated-call ban balloons into a wholesale invalidation of the law and relieves Pro Custom and other companies of all restrictions on their telemarketing.

Though Pro Custom may "expect" the Supreme Court to rule within four months, it fails to justify a stay with any hardship or inequity that would result otherwise. (*See* Dkt. 9-1, at 3.) Defendant touches lightly on the potential for harm, claiming only that neither party would be harmed by a stay. (*Id.* at 4.) But the balance of harms is not just a question of whether a stay would harm the parties— of course, it is unlikely that any movant seeking a stay would be harmed the very relief that they seek. As described in *Landis*, the balance is between the potential for harm to the non-movant if the case is stayed and the "hardship or inequity in being required to go forward" that the movant would experience if the case is not stayed. *See Landis*, 299 U.S. at 255.

Pro Custom presents no such hardship in the motion aside from the natural costs of litigation that it asserts will be rendered "unnecessary," based on its long-shot prediction the Supreme Court will nullify the entire TCPA upon review of a single, potentially unconstitutional exemption. (*See* Dkt. 9-1, at 3–4.) On the other

hand, Plaintiffs stand only to be harmed by a stay. The injunctive relief they seek is necessary to prevent continued automated calling to themselves and the Class, and every month that this matter is delayed is another month for Pro Custom to continue its unlawful practices and exacerbate the harms at issue in the case (*See* Dkt. 1, at ¶ 32.) Further, the difficulty for Plaintiffs to prove their case can only increase with a stay, as the passage of time inevitably impacts witness memory and the availability of evidence. *See Ciolli v. Iravani*, No. 2:08-cv-02601, 2008 WL 4412053, at *3 (E.D. Pa. Sept. 23, 2008). Thus, the balance of harms does not favor granting a stay.

Defendant claims that the relevance of the Supreme Court's review of *AAPC* to this case "cannot be overstated," but it has done precisely that. (*See* Dkt. 9-1, at 3.) The Supreme Court is poised to consider the constitutionality of the government-debt exemption that was recently added to the TCPA—that exception is not applicable to this case, and barring an implausible upending of the entire TCPA, the opinion is unlikely to have any bearing on this action. Accordingly, a stay is inappropriate, and the case should proceed.

### B. Plaintiffs Have Sufficiently Alleged TCPA Violations, Including The Use Of An Autodialer And The Lack Of Consent.

The next form of relief sought by Pro Custom is dismissal of the Complaint under Rule 12(b)(6) for failure to state a claim. (*See* Dkt. 9-1, at 5–8.) However, Defendant's argument seemingly ignores the factual allegations made by Plaintiffs.

11

The dialing system used for the calls at issue is in Pro Custom's possession and control, and therefore Plaintiffs cannot make more specific allegations without discovery. Nevertheless, Plaintiffs have pleaded, under the relevant standards, that the calls they received were made using an ATDS. Likewise, Smith and Landy both alleged that they did not provide consent to receive the calls. Defendant is strategically ignoring allegations in the Complaint—Plaintiffs have sufficiently stated a claim for relief.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All factual allegations in the complaint and reasonable inferences must be taken as true and "viewed in the light most favorable to the non-moving party." *Caleb v. CRST, Inc.*, 43 Fed. Appx. 513, 515 (3d Cir. 2002). A complaint should not be dismissed unless it appears "beyond a doubt" that the plaintiff can prove no set of facts that would entitle them to the relief sought. *Rupert v. PPG Industries, Inc.*, No. 07cv0705, 2007 WL 3125092, at *1 (W.D. Pa. Oct. 24, 2007) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Marshall-Silver Construction Co. v. Mendel*, 894 F.2d 593, 595 (3d Cir.1990)).

The TCPA prohibits the use of an automatic telephone dialing system to make texts or calls to consumer cell phones. 47 U.S.C. § 227(b)(1)(A)(iii). The

statute defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). To state a cause of action, a plaintiff must allege: (1) that the defendant called the plaintiff's cellphone; (2) using an ATDS; (3) without the plaintiff's prior express consent. *Douek v. Bank of Am. Corp.*, Civ. No. 17-2313, 2017 WL 3835700, at *2 (D. N.J. Sept. 1, 2017).

At the motion to dismiss stage, there is "no way for Plaintiff to know the technological capabilities of the device(s) used to place the calls . . . short of Plaintiff learning that information in discovery." *Shelton v. Nat'l Gas & Elec., LLC*, Civ. No. 17-4063, 2019 WL 1506378, at *11 (E.D. Pa. Apr. 5, 2019) (quoting *Whitehead v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-470-FtM-99MRM, 2018 WL 5279155, at *4 (M.D. Fla. Oct. 24, 2018)). Thus, a plaintiff can allege facts about the nature of the calls to allow the Court to infer that the calls were placed using an ATDS. *See Douek*, 2017 WL 3835700, at *2.

Here, Plaintiffs have sufficiently stated a claim for relief under the TCPA. Plaintiffs alleged throughout the Complaint that Defendant called their cellphones.[2] (*See, e.g.*, Dkt. 1 at ¶¶ 15, 20, 25.) Plaintiffs also alleged that an ATDS was used (*id.* at ¶¶ 10, 20, 25, 42, 44), and these claims are supported by factual details about

---

[2] Pro Custom does not seem to dispute that it was responsible for the calls. (*See* Dkt. 9-1, at 16.)

13

the calls, including allegations as to the frequency of calls and their pre-recorded messages. (*Id.* at ¶¶ 11, 21, 26–27.) Finally, Plaintiffs also alleged that they did not provide any prior express written consent to receive the calls at issue. (*Id.* at ¶¶ 12, 22–23, 28–30, 42–43.) Viewed in a light most favorable to Plaintiffs, the claim for relief is sufficiently plausible to withstand a motion to dismiss.

Defendant's Motion either ignores Plaintiffs' factual allegations or asks the Court to do so. Pro Custom claims that Plaintiffs allege only that the equipment was a predictive dialer, but even in the paragraphs *cited* by Defendant, Plaintiffs allege equipment with "the capacity to store, produce, and dial random or sequential numbers." (Dkt. 9-1, at 7; Dkt. 1, at ¶¶ 10, 44.) That the Complaint also suggests the equipment includes predictive dialer features does not negate or diminish the ATDS allegations in any way. (*See* Dkt. 1 at ¶ 10.) Pro Custom also eagerly points out that the Complaint does not "identify the dialer," but, as explained above, that cannot be expected without discovery. (Dkt. 9-1, at 6; *Shelton*, 2019 WL 1506378, at *11.

Defendant further makes a demonstrably false assertion that "Plaintiffs do not allege that Defendant called them without consent," citing to two paragraphs in the Complaint that refer to the insufficiency of any oral or retroactive consent. (Dkt. 9-1, at 7; Dkt. 1, at ¶¶ 23, 29.) Landy and Smith immediately precede those paragraphs with explicit allegations that they "never provided any oral or written

14

consent" that would pass muster under the TCPA. (Dkt. 1, at ¶¶ 22, 28.) These allegations are also repeated and reinforced later in the Complaint. (*Id.* at ¶¶ 42–43.) Whether Defendant overlooked the Plaintiffs' no-consent allegations or deliberately avoided them, Landy and Smith have properly plead violations of the TCPA.

In short, Defendant's arguments for dismissal plainly overlook the factual allegations in the Complaint. Read in its entirety, the Complaint states a claim for relief from Defendant's unlawful telemarketing—Pro Custom's attempts to isolate allegations and misrepresent Plaintiffs' claims to the Court should not be rewarded. Landy and Smith have met their burden to survive dismissal, and Defendant's motion to dismiss should be denied.

### C.   Defendant's Constitutional Arguments Should Be Rejected Because They Have Not Been Properly Noticed And They Do Not Affect Plaintiffs' Claims.

The third form of relief sought by Defendant is judgment on the pleadings based on its argument that the TCPA violates the First and Fourteenth Amendments to the Constitution. (Dkt. 9-1, at 8–15.) However, Pro Custom's constitutional challenge has not been properly noticed and should be disregarded. Further, Defendant is merely repeating *AAPC*'s challenge to the government-debt exemption, which has never succeeded in invalidating the TCPA. At the very least,

15

the Court should decline to rule on the constitutional question that has already been taken up by the Supreme Court.

Any party who challenges the constitutionality of a federal statute in a pleading or motion must file a notice of constitutional question if the United States is not a party to the action. FED. R. CIV. P. 5.1(a)(1); D. N.J. LOCAL CIV. R. 24.1(a). The notice is a prerequisite for service to the attorney general, certification of the challenge by the Court, and an opportunity for the attorney general to intervene. FED. R. CIV. P. 5.1(a)(2), 5.1(b)–(c). Failure to comply with the notice requirement often results in the Court dismissing or declining to consider constitutional arguments. *See, e.g.*, *Mincey v. Jefferson Capital Sys., LLC*, Civil No. 19-285 (NLH/JS), 2019 WL 4686766, at \*7 (D. N.J. Sept. 26, 2019); *Vazquez v. Triad Media Solutions, Inc.*, Civ. No. 15-CV-07220 (WHW)(CLW), 2016 WL 155044, at \*5 (D. N.J. Jan. 13, 2016); *Jones v. U-Haul Co.*, 16 F. Supp. 3d 922, 942 (S.D. Ohio 2014).

Despite challenging the constitutionality of the TCPA in its motion, Defendant has not filed the required notice. Pro Custom has failed to comply with the Federal Rules and Local Rules, and the Court should reject or decline to consider Defendant's constitutional arguments.

Further, even if the Court were to consider its arguments, Pro Custom's challenge simply mirrors the challenge made in *AAPC* and numerous other cases—

16

exactly *zero* of which have resulted in a determination that the TCPA as a whole is unconstitutional. Defendant argues that the government-debt collection exception is an unconstitutional speaker preference, rendering the statute a content-based restriction. (Dkt. 9-1, at 9–10.) Subsequently, Pro Custom claims that the TCPA is not narrowly tailored to further a compelling state interest. (*Id.* at 12–14.) Thus, according to Defendant, the entire statute should be stricken as unconstitutional. (*Id.*)

Every court that has considered this issue, however, has rejected the relief that Pro Custom seeks. Defendant correctly cites to eight different opinions across the country that have considered the constitutionality of the TCPA and its government-debt exemption—in addition to *Duguid* and *AAPC*, *Am. Ass'n of Political Consultants v. Sessions*, 323 F. Supp. 3d 737 (E.D.N.C. 2018); *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920 (C.D. Cal. 2018); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128 (D. Minn. 2017); *Mejia v. Time Warner Cable Inc.*, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017); *Holt v. Facebook Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017); and *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017). (Dkt. 9-1, at 11–12.)

While Defendant is correct that each court found the government-debt exemption to be content-based, Pro Custom fails to mention that *seven of the eight* courts to consider this challenge found the federal government's stated interest in

17

protecting residential privacy to be compelling.[3] Likewise, six of the eight courts found that the government debt exception was narrowly tailored to further that interest—neither underinclusive nor overinclusive—and therefore constitutional.[4] The only two courts that determined the exemption did not survive strict scrutiny, as explained above, exercised the remedy "preferred" by the Supreme Court (and required by the TCPA): severance of the offending provision. *AAPC*, 923 F.3d at 171–72; *Duguid*, 926 F.3d at 1156–57. Once again, Pro Custom has no ground to stand on in suggesting that the entire TCPA is rendered unenforceable by the government-debt exemption added in 2015.

Plaintiffs' claims do not implicate the government-debt exception, whether it is found constitutional or not. The Court has recognized this reality, previously declining to reach the merits of a challenge to the exemption because it had "no impact on the remainder of the statute and can be severed." *Johnson v. Comodo Group, Inc.*, Civil Action No. 16-4469 (SDW)(LDW), 2020 WL 525898, at *9 (D. N.J. Jan. 31, 2020). In *Johnson*, as a result of the Supreme Court's grant of

---

[3] *AAPC*, 923 F.3d at 168; *Am. Ass'n of Political Consultants v. Sessions*, 323 F. Supp. 3d at 744; *Gallion*, 287 F. Supp. 3d at 931; *Greenley*, 271 F. Supp. 3d at 1150; *Mejia*, 2017 WL 3278926, at *16; *Holt*, 240 F. Supp. 3d at 1033; *Brickman*, 230 F. Supp. 3d at 1046.

[4] *Am. Ass'n of Political Consultants v. Sessions*, 323 F. Supp. 3d at 744–47; *Gallion*, 287 F. Supp. 3d at 930–31; *Greenley*, 271 F. Supp. 3d at 1150–51; *Mejia*, 2017 WL 3278926, at *17; *Holt*, 240 F. Supp. 3d at 1033–34; *Brickman*, 230 F. Supp. 3d at 1048.

*certiorari*, the Court reserved decision on the constitutional issues. *Id.* At the very least, the same should be done here. However, the fact remains that Defendant has failed to comply with the Court's rules and failed to properly notice its constitutional challenge. Accordingly, its arguments should not be considered.

### D. The Facts Of This Case Remain Disputed, And Summary Judgment Before Any Discovery Would Be Inappropriate.

Defendant's final request is that the Court "set an immediate schedule" for Pro Custom to move for summary judgment. (Dkt. 9-1, at 15.) Notwithstanding the fact that Defendant does not need authorization from the Court to move for summary judgment, Defendant's arguments are based on the contention that the "undisputed" dialer at issue is not an ATDS. (*Id.*) This claim is simply incorrect— without any discovery to speak of, the capabilities of Defendant's dialing equipment are plainly in dispute, and summary judgment would be inappropriate.

Rule 56 permits a party to move for summary judgment "at any time" until thirty days after the close of discovery—permission is not needed. FED. R. CIV. P. 56(b); *Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 522 (3d Cir. 1973). Tellingly, Pro Custom "requests permission" to file a motion, perhaps as a recognition of the "well established" standard that a court is obliged to give the party opposing summary judgment an adequate opportunity to obtain discovery. (Dkt. 9-1, at 15); *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)). "This is necessary

19

because, by its very nature, the summary judgment process presupposes the existence of an adequate record." *Doe*, 480 F.3d at 257. Thus, the Rule itself provides that if the nonmovant shows it cannot present facts essential to its opposition, the court may defer consideration, deny the motion, or allow time to take discovery. FED. R. CIV. P. 56(d); *see also Radich v. Goode*, 886 F.2d 1391, 1393 (3d Cir. 1989).

At this point, no discovery has been exchanged—Pro Custom is requesting permission to move for summary judgment in its very first response to the Complaint. The Court has no record to consider for a motion to dismiss, aside from Plaintiffs' allegations that the calls were placed using an ATDS. (*See* Dkt. 1, at ¶¶ 10, 20, 25, 42, 44). However, despite these allegations, Defendant inexplicably claims in its motion that the "undisputed" dialer at issue in this case does not qualify as an ATDS. (Dkt. 9-1, at 15.) Defendant offers no evidence to support this claim, stating only that the dialer would not satisfy relevant standards and that Pro Custom "can and will demonstrate" its position.[5] (*Id.* at 16.) In doing so, Defendant has highlighted a factual dispute that will require discovery to resolve and renders summary judgment inappropriate.

---

[5] Defendant also claims, yet again, that Plaintiffs consented to the calls and did not allege otherwise. (*See* Dkt. 9-1, at 16.) As before, this claim is demonstrably false. (*See* Dkt. 1, at ¶¶ 12, 22–23, 28–30, 42–43.)

If Pro Custom "can and will demonstrate" that its dialing equipment doesn't qualify as an ATDS, it should do so through discovery. An unsubstantiated contention is not evidence, and it serves only to solidify the dispute between the parties as to what equipment was used. Even if Defendant were to file a motion for summary judgment now (it does not need the Court's permission), the Federal Rules and Third Circuit precedent provide that Plaintiffs should be given an adequate opportunity to obtain discovery and oppose the motion. For these reasons, Pro Custom's request is unnecessary, inappropriate, and premature. The case should proceed to discovery.

## IV. CONCLUSION

The Court should deny Pro Custom's motion on all counts. Pro Custom seeks only to delay this matter, and the Supreme Court's ruling on the constitutionality of the TCPA's government-debt collection exemption will have no bearing on the case. Plaintiffs have sufficiently stated claims for relief under the TCPA to survive a motion to dismiss. Further, Pro Custom's requests for judgment on the pleadings and permission to file a motion for summary judgment are both procedurally inappropriate. Accordingly, the Court should deny Defendant's motion, permit the parties to commence discovery, and award any such relief as it deems necessary and just.

Respectfully submitted,

Dated: March 2, 2020                    By:  /s/ *Ari Marcus*
                                            One of Plaintiffs' Attorneys

                                        Ari Marcus, Esq.
                                        Marcus & Zelman, LLC
                                        701 Cookman Avenue, Suite 300
                                        Asbury Park, New Jersey 07712
                                        Tel: 732-695-3282
                                        Fax: 732-298-6256
                                        ari@marcuszelman.com

                                        Steven L. Woodrow*
                                        swoodrow@woodrowpeluso.com
                                        Patrick H. Peluso*
                                        ppeluso@woodrowpeluso.com
                                        Taylor T. Smith*
                                        tsmith@woodrowpeluso.com
                                        Woodrow & Peluso, LLC
                                        3900 E. Mexico Avenue, Suite 300
                                        Denver, Colorado 80210
                                        Telephone: (720) 213-0676
                                        Facsimile: (303) 927-0809

                                        *Admitted *Pro Hac Vice*

22

## **CERTIFICATE OF SERVICE**

I hereby certify that the above papers were filed through the Court's ECF

system, which will serve the papers electronically to all counsel of record.


 /s/ Ari Marcus