Ari Marcus, Esq.
Marcus & Zelman, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Tel: 732-695-3282
Fax: 732-298-6256
ari@marcuszelman.com
[Additional counsel appearing on signature page]

*Counsel for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEWART SMITH and BRENNAN LANDY, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>PRO CUSTOM SOLAR LLC d/b/a MOMENTUM SOLAR, a New Jersey limited liability company,<br><br>*Defendant.* | CIVIL ACTION<br><br>Case No. 2:19-cv-20673<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>Motion Date: March 16, 2020 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.  INTRODUCTION ..................................................................................... 1

II.  SUMMARY OF THE CLAIMS ................................................................ 2

III.  ARGUMENT ............................................................................................. 3

    A.  The Supreme Court's *AAPC* Ruling Will Not Likely Have Any
        Bearing On Plaintiffs' Claims, And A Stay Is Inappropriate ........ 4

    B.  The Factors Of A *Landis* Stay Are Unsupported In This Case ...... 7

IV.  CONCLUSION ........................................................................................ 10

i

# TABLE OF AUTHORITIES

## CASES

*Am. Ass'n of Political Consultants, Inc. v. FCC*,

    923 F.3d 159 (4th Cir. 2019) ....................................................................4–7

*Am. Ass'n of Political Consultants, Inc. v. Sessions*,

    323 F. Supp. 3d 737, (E.D. N.C. 2018) ..........................................................5

*Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320 (2006) ......................6

*Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Civ. No. 11-0011,

    2011 WL 4056318 (D. N.J. Sept. 12, 2011) ....................................................8

*Ciolli v. Iravani*, No. 2:08-cv-02601,

    2008 WL 4412053 (E.D. Pa. Sept. 23, 2008) ...............................................10

*Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) ...................................6–7

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) .......6

*Iowa Network Services, Inc. v. AT&T Corp.*, No. 3:14-cv-3439 (PGS) (LHG),

    2019 WL 4861438 (D. N.J. Oct. 2, 2019) ......................................................8

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) ...................................................8, 9

*McDonald v. Novartis Pharms., Corp.*, No. 07-0655,

    2007 WL 4191750 (D. N.J. Nov. 20, 2007) ....................................................8

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015) ...........................................6

## STATUTES, RULES, AND OTHER SOURCES

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a),

    129 Stat. 584 (2015) ..........................................................................5

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* ............5, 6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Plaintiffs Stewart Smith ("Smith") and Brennan Landy ("Landy") (collectively "Plaintiffs") allege in their complaint, filed on behalf of themselves and a class of similarly situated individuals, that Defendant Pro Custom Solar LLC d/b/a Momentum Solar ("Defendant" or "Pro Custom") violated the Telephone Consumer Protection Act ("TCPA") by making unsolicited, autodialed and prerecorded phone calls to consumer cell phones without prior express written consent. In response, Defendant's scattershot motion asks the Court for relief in a variety of forms, including a stay, dismissal, judgment on the pleadings, and permission to file a motion for summary judgment. On February 26, 2020, the Court denied the portions of Pro Custom's motion seeking dismissal and judgment on the pleadings and thereby limited briefing to Defendant's request to stay the case. (Dkt. 11.)

Fortunately for Plaintiffs and the Class, Pro Custom's argument to stay the case does not hold up. Pro Custom misleadingly frames an upcoming Supreme Court case as bearing on the constitutionality of the entire TCPA, when in fact that case relates to a content-based exemption for certain debt collection calls, which is readily severable from the TCPA and not at issue in this case. Though Defendant may be eager to do away with the TCPA, it cannot credibly assert that the Supreme

Court is likely to do so—its speculation on what the Supreme Court may do is not grounds for a stay. Likewise, Defendant's analysis of the factors that support a *Landis* stay is flawed, as the neither judicial efficiency nor the balance of harms favor delaying this matter. Put simply, Pro Custom's request for a stay is meritless.

Accordingly, and as explained below, the Court should deny Defendant's Motion and permit this matter to proceed to discovery.

## II.    SUMMARY OF THE CLAIMS

In the Complaint, Plaintiffs claim that Pro Custom violated the TCPA by making unsolicited, autodialed and prerecorded calls to their cellphones and to the cellphones of a class of consumers, all of whom did not provide prior express written consent to receive such calls. (*See* Compl., dkt. 1 at ¶ 42.) One of the components of the autodialed claim is that the technology used by Pro Custom to make the calls qualifies as an ATDS under the TCPA—equipment with the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to thereafter dial such numbers. (*See id.* ¶¶ 10, 44–45.)

Smith alleged four different calls from Defendant that were made with an ATDS or prerecorded voice, and he "never provided any oral consent or written consent" to receive such calls. (*Id.* ¶¶ 20–22.) Similarly, Landy alleged two calls received from Defendant that featured a pre-recorded voice—Landy also alleged

2

that he "never provided any oral consent or written consent" to receive the calls. (*Id.* ¶¶ 25–28.) By making the calls alleged in the Complaint, Defendant caused harm to Plaintiffs and to a class of individuals who experienced the same calls without providing any consent. (*See id.* ¶¶ 31–32.)

In order to redress these harms on behalf of themselves and the other Class members, Plaintiffs alleged and will seek to certify the following class:

> **No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's solar products and services; (5) using the same equipment that was used to call the Plaintiffs; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiffs.

(*Id.* ¶ 33.) As the term "No Consent Class" suggests, this proposed class is limited to consumers for whom Pro Custom "*claims* it obtained prior express written consent" to call in the same manner as it may claim it did to call Plaintiffs—as alleged by Plaintiffs, no consent was given, and the same would be true for consumers who fit the class definition. (*Id.*) (emphasis added).

## III.   ARGUMENT

Pro Custom's request for a stay, premised on an apparent confidence that the TCPA's restrictions on autodialers will be declared unconstitutional, mischaracterizes the issue before the Supreme Court. The *AAPC* case concerns an

exemption to the TCPA for certain debt collection calls which are not at issue here, and only a (unlikely) decision to invalidate the entire statute as unconstitutional would have any bearing here. A stay pending Pro Custom's pie-in-the-sky expectation is not appropriate. Further, Defendant has failed to justify a stay under the relevant factors for consideration. Staying the case will not promote judicial economy or simplify any issues, and the balance of harms weighs against postponing the case.

In short, Defendant's request is without merit, and the Court should therefore deny what remains of Pro Custom's motion.

### A.   The Supreme Court's *AAPC* Ruling Will Not Likely Have Any Bearing On Plaintiffs' Claims, And A Stay Is Inappropriate.

At the outset of its motion, Pro Custom asks the Court to stay the case pending the Supreme Court's ruling in the *AAPC* matter. However, Defendant's motion overstates the scope of the Supreme Court's review, which is considerably less likely to impact this litigation than Pro Custom posits. Accordingly, a stay pending resolution of an issue that bears no relation to Plaintiffs' complaint would be inappropriate.

Defendant's motion to stay is premised on the Supreme Court's decision to grant *certiorari* and review the Fourth Circuit's recent ruling in *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019). The *AAPC* case concerns a challenge to the constitutionality of a TCPA exemption

for debt collection calls. In 2015, Congress enacted a third exemption[1] to the TCPA's ban on automated calls to permit calls "made solely to collect a debt owed to or guaranteed by the United States." *AAPC*, 923 F.3d at 162 (citing Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a), 129 Stat. 584, 588 (2015)).

In 2016, AAPC and several other plaintiffs challenged the debt collection exemption to the TCPA as unconstitutional in the Eastern District of North Carolina. *See Am. Ass'n of Political Consultants, Inc. v. Sessions*, 323 F. Supp. 3d 737, 739 (E.D. N.C. 2018). The court ultimately granted summary judgment in favor of the defendant, finding that: (1) the TCPA's government-debt exemption was a content-based restriction of speech; but (2) the exemption withstood strict scrutiny and therefore was not unconstitutional. *Id.* at 743–44. On appeal, the Fourth Circuit vacated and remanded the district court's findings. The Court in *AAPC* agreed that the government-debt exemption was a content-based restriction on speech, but held that it could not withstand strict scrutiny because it is "woefully underinclusive" and impedes the compelling privacy interest that the TCPA was enacted to protect. *AAPC*, 923 F.3d at 168–170. In other words, the exemption cannot be said to further a compelling interest "when it leaves

---

[1] The first two exemptions, included in the TCPA when it was originally enacted in 1991, are for calls made for emergency purposes and calls made with the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A).

appreciable damage to that supposedly vital interest unprohibited." *Id.* at 170 (quoting *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2232 (2015)).

Rather than striking the automated call ban or the TCPA itself as unconstitutional, the Fourth Circuit ordered the Supreme Court's "preferred remedy": severance of the government-debt exemption from the TCPA. *Id.* at 171–72. The Court explained that severance was appropriate for a number of reasons. First, severance of a flawed portion of a statute is often the Supreme Court's "required course" to "limit the impact of its ruling of constitutional infirmity" and leave the valid remainder of a statute intact. *Id.* at 171 (citing *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010); *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328 (2006)). Second, the preference for severance is bolstered by the TCPA's explicit mandate that if any part "is held invalid, the remainder . . . shall not be affected." *Id.*; 47 U.S.C. § 608. Finally, the Court noted that the automated call ban would not be undermined by severance because "[f]or twenty-four years, from 1991 until 2015, the automated call ban was 'fully operative'" without the government-debt exemption. *AAPC*, 923 F.3d at 171 (citing *Free Enter. Fund*, 561 U.S. at 509).

The Ninth Circuit reached the same conclusions in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). "The newly enacted exception [for government-debt calls] did not suddenly and silently become so integral to the

6

TCPA that the statute could not function without it." *Id.* at 1157. Thus, the Court similarly concluded that severing the violative exemption "preserves the fundamental purpose of the TCPA" and restores the Act to a content-neutral state. *Id.*

Here, Plaintiffs' claims do not relate to the government-debt collection exemption in any way. Nevertheless, Defendant claims that there are "multiple outcomes" in the Supreme Court's review that could impact this case, thereafter detailing only one such outcome—a determination that the TCPA and its restrictions on autodialed calls are rendered unconstitutional *in their entirety* by the government-debt exemption. (Dkt. 9-1, at 2.) This is the only outcome described by Pro Custom because it is the *only* scenario in which the *AAPC* decision could impact this case in any way. Plaintiffs wouldn't presume to divine with any certainty how the Supreme Court will rule, but Pro Custom's prediction that a nearly thirty-year-old statute will be thrown out due to the unconstitutionality of a five-year-old exemption is farfetched at best, especially given that severance is not only preferred by the Supreme Court but required by the TCPA itself. *AAPC*, 923 F.3d at 171–72; *Duguid*, 926 F.3d at 1156–57.

### B.    The Factors Of A *Landis* Stay Are Unsupported In This Case.

Defendant's subsequent analysis of the factors supporting a stay is likewise flawed. Though courts have inherent power to control their own dockets, which

includes the power to stay, any party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Iowa Network Services, Inc. v. AT&T Corp.*, No. 3:14-cv-3439 (PGS) (LHG), 2019 WL 4861438, at *6 (D. N.J. Oct. 2, 2019) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)). When considering the suitability of a stay, courts in this circuit analyze the following factors: (1) whether a stay will simplify issues and promote judicial economy; (2) the balance of harm to the parties; and (3) the length of the stay. *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Civ. No. 11-0011, 2011 WL 4056318, at *2 (D. N.J. Sept. 12, 2011) (citing *McDonald v. Novartis Pharms., Corp.*, No. 07-0655, 2007 WL 4191750, at *1 (D. N.J. Nov. 20, 2007)).

Here, the relevant factors do not support granting a stay. Delaying this matter while the Supreme Court considers the constitutionality of the government-debt exception to the TCPA—one that is not at issue in this case—does not promote judicial economy or simplify any issues. Rather, it is a request to postpone the case so that Defendant can wait and hope that review of a discrete (and here, immaterial) exemption to the TCPA's automated-call ban balloons into a wholesale invalidation of the law and relieves Pro Custom and other companies of all restrictions on their telemarketing.

8

Though Pro Custom may "expect" the Supreme Court to rule within four months, it fails to justify a stay with any hardship or inequity that would result otherwise. (*See* Dkt. 9-1, at 3.) Defendant touches lightly on the potential for harm, claiming only that neither party would be harmed by a stay. (*Id.* at 4.) But the balance of harms is not just a question of whether a stay would harm the parties— of course, it is unlikely that any movant seeking a stay would be harmed the very relief that they seek. As described in *Landis*, the balance is between the potential for harm to the non-movant if the case is stayed and the "hardship or inequity in being required to go forward" that the movant would experience if the case is not stayed. *See Landis*, 299 U.S. at 255.

Pro Custom presents no such hardship in the motion aside from the natural costs of litigation that it asserts will be rendered "unnecessary," based on its long-shot prediction the Supreme Court will nullify the entire TCPA upon review of a single, potentially unconstitutional exemption. (*See* Dkt. 9-1, at 3–4.) On the other hand, Plaintiffs stand only to be harmed by a stay. The injunctive relief they seek is necessary to prevent continued automated calling to themselves and the Class, and every month that this matter is delayed is another month for Pro Custom to continue its unlawful practices and exacerbate the harms at issue in the case (*See* Dkt. 1, at ¶ 32.) Further, the difficulty for Plaintiffs to prove their case can only increase with a stay, as the passage of time inevitably impacts witness memory and

the availability of evidence. *See Ciolli v. Iravani*, No. 2:08-cv-02601, 2008 WL 4412053, at *3 (E.D. Pa. Sept. 23, 2008). Thus, the balance of harms does not favor granting a stay.

In short, Pro Custom has failed to justify its motion to stay under the relevant factors for consideration. Postponing this matter will not serve judicial economy and will not simplify any issues, as the Supreme Court case in question is unlikely to have any bearing on these proceedings. Only Pro Custom stands to benefit from a stay—the passage of time will inevitably work against Plaintiffs and their pursuit of relief, while Defendant will be permitted to continue its telemarketing without being held to account. Accordingly, a stay is inappropriate, and the case should proceed.

## IV.   CONCLUSION

The Court should deny Pro Custom's motion on all counts. Pro Custom seeks only to delay this matter, and the Supreme Court's ruling on the constitutionality of the TCPA's government-debt collection exemption will have no bearing on the case. Defendant claims that the relevance of the Supreme Court's review of *AAPC* to this case "cannot be overstated," but it has done precisely that. (*See* Dkt. 9-1, at 3.) The Supreme Court is poised to consider the constitutionality of the government-debt exemption that was recently added to the TCPA—that

exception is not applicable to this case, and barring an implausible upending of the entire TCPA, the opinion is unlikely to have any bearing on this action.

Accordingly, a stay is inappropriate. The Court should deny Defendant's motion, permit the parties to commence discovery, and award any such relief as it deems necessary and just.

Respectfully submitted,

Dated: March 3, 2020

By:  /s/ *Ari Marcus*
        One of Plaintiffs' Attorneys

Ari Marcus, Esq.
Marcus & Zelman, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Tel: 732-695-3282
Fax: 732-298-6256
ari@marcuszelman.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Admitted *Pro Hac Vice*

11

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above papers were filed through the Court's ECF

system, which will serve the papers electronically to all counsel of record.

<u> /s/ Ari Marcus        </u>